NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC HURT, | ) |
| Petitioner, | ) |
| v. | ) Civ. No. 08-2375 (HAA) |
| UNITED STATES OF AMERICA, | ) **OPINION AND ORDER** |
| Respondent. | ) |

Eric Hurt
Reg. No. 28171050
Federal Correctional Institution - Fairton
P.O. Box 420
Fairton, New Jersey 08320
*Pro Se*

James B. Nobile, Esq.
Assistant United States Attorney
United States Attorney's Office
970 Broad Street, Suite 700
Newark, New Jersey 07102
*Attorneys for United States of America*

**ACKERMAN, Senior District Judge:**

      This matter comes before the Court on Petitioner Eric Hurt's pro se motion pursuant to 28 U.S.C. § 2255 (Doc. No. 1) to vacate, set aside, or correct his sentence.  Hurt raises a number of arguments challenging the Court's Sentencing Guidelines calculation and the effectiveness of his counsel.  For the following reasons, the Court will deny Hurt's motion except insofar as Hurt alleges that his counsel provided ineffective assistance of counsel by failing to file a notice of

1

appeal.

### BACKGROUND

On August 16, 2006, Hurt pled guilty to two counts of a five-count Information (the "First Information") charging him with embezzling and obtaining public funds by fraud, and with making and subscribing a false federal tax return.  On November 28, 2006, Hurt pled guilty to a second, one-count Information (the "Second Information") charging him with wire fraud for submitting an interstate request to embezzle funds from the Montessori Day School in Brooklyn, New York (the "School fraud").  On May 15, 2008, this Court sentenced Hurt to 41 months' imprisonment and three years supervised release.

Hurt asks this Court to set aside his sentencing on five separate grounds.  Hurt's claims in Grounds 1-3 all pertain to the Court's offense level computation under the United States Sentencing Guidelines.[1]  First, Hurt argues that the offense level for the tax loss in connection with Count 5 of the First Information was erroneously calculated.  Second, Hurt argues that the base offense level for the School fraud offense was incorrectly calculated at 7 instead of 6.  Third, Hurt contends that the total loss in connection with the School fraud offense was $120,000 and not $157,085.86 as calculated by the Court.

Hurt's remaining claims pertain to issues largely beyond the purview of the Court's offense level computation.  In Ground 4, Hurt asserts that the Court failed to properly inquire into Hurt's prior military record, and thus, Hurt's criminal history should be decreased from a

---

[1] Hurt categorizes his claims as "Grounds," as does the Government's brief.  For purposes of consistency, the Court will employ the same nomenclature.

category II to a category I. In Ground 5, Hurt argues that his counsel was ineffective for eight separate reasons.

The Court will deny Hurt's claims contained in Grounds 1-3 and parts of Ground 5 because, as the Court will explain, Hurt waived those claims based on the collateral-attack waiver contained in his plea agreements. The Court will deny Ground 4 and additional segments of Ground 5 on the merits. However, the Court will order that an evidentiary hearing be held to resolve the factual dispute concerning Hurt's purported request that his counsel file a notice of appeal. The Court will address Hurt's claims *seriatim.*

## DISCUSSION

### I. Hurt Waived His Claims Contained in Grounds 1-3 and Parts of Ground 5 Pursuant to his Plea Agreement(s).

A motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is the primary mechanism for a prisoner to collaterally attack a federal conviction and sentence. Relief under this section is warranted for errors that occurred at trial or sentencing. 28 U.S.C. § 2255. A section 2255 motion must be presented to — and can be entertained initially only by — the court which imposed the sentence. 28 U.S.C. § 2255(a).

Hurt agreed to waive most of his rights to collaterally attack his sentence in two instances: in his initial plea agreement and in his later agreement to plead guilty to the School fraud. In the first agreement, dated March 23, 2006, Hurt agreed to "waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under . . . 28 U.S.C. § 2255." (App., Exh. 1, at 4.) In the later agreement, dated October 18,

2006, Hurt stipulated that he had voluntarily waived "the right to file . . . any collateral attack, or any other writ or motion, including but not limited to . . . a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the total Guidelines offense level of 19[.]" (App., Exh. 5, at ¶ 9.)  Expressly not included in this waiver was Hurt's right "to appeal the sentencing court's determination of the criminal history category." (*Id.*)

Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver. *Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987).  An appeal in a criminal case is among those rights that may be waived, *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and may include a waiver of rights to file a collateral attack under 28 U.S.C. § 2255, *United States v. Mabry*, 536 F.3d 231, 239 (3d Cir. 2008).  The exception to this rule is when the petitioner claims ineffective assistance of counsel specifically in regards to the guilty plea or the agreement to the collateral attack waiver itself.  *See United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[I]t is consistent with Supreme Court precedent to enforce a waiver of § 2255 rights expressly contained in a plea agreement when the collateral attack does not challenge counsel's representation in negotiating or entering the plea or the waiver.").  A court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement of the waiver works no miscarriage of justice, based on the record evidence before it.  *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001).

Here, Hurt does not specifically allege that his guilty pleas were involuntary.  Indeed, the record supports that Hurt's pleas were knowing and voluntary.  In addition to signing his two

4

plea agreements setting forth the waiver, Hurt's Rule 11 Form of August 15, 2006 (application for permission to enter a guilty plea) affirmed that he "waived the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court" had erred in accepting the factual stipulations in the plea agreement. (App., Exh. 3, ¶¶ 27, 37.) Hurt further indicated that "I believe that my lawyer has done all that anyone could do to counsel and assist me[.]" (*Id.* ¶ 40.) During Hurt's August 16, 2006 guilty plea hearing, Hurt answered certain questions posed by the Court. Hurt indicated that he attended community college and that he had no serious medical or psychological conditions or addictions. (App., Exh. 4, at 5-6.) The Court then specifically addressed the waiver agreement:

> COURT: Mr. Eyerman [counsel for Hurt], would you direct your client's attention to that particular paragraph [regarding waiver of appeal]. And, Mr. Hurt, I want you to read it now. And if you don't understand it, let us know right now. Read it to yourself. And when you're finished, let me know.
>
> MR. EYERMAN: I can question him?
>
> COURT: Now Mr. Hurt, having read it, if you don't understand all of it, or any part of it, you're free at this time to discuss it privately with Mr. Eyerman that particular paragraph, if you want to. And if you understand it, we'll go on it.
>
> Hurt: I understand it.
>
> COURT: Thank you. Then you understand, sir, that you've agreed to waive certain of your rights to appeal your sentence or to collaterally attack the judgment of sentence, as a matter of law. Do you understand that, sir?
>
> Hurt: Yes, your Honor.

(*Id.* at 22-23.) The Court conducted a nearly-identical colloquy with Hurt on November 28, 2006 regarding the Second Information charging him with the School fraud. (*See* App., Ex. 7.) In

5

both instances, the Court accepted the guilty pleas after finding that Hurt possessed sufficient intelligence and wherewithal to understand what he was doing. (App., Exh. 4, at 29.)

The plea agreements and colloquy buttress the conclusion that Hurt's waiver was knowing and voluntary. *See United States v. Gwinnett*, 483 F.3d 200, 203-04 (3d Cir. 2007) (holding that courts should look to the plea agreement and colloquy to evaluate knowing and voluntary nature of waiver). Between the plea agreements, Rule 11 Application, and Court colloquy, Hurt was given several opportunities to seek clarification on the terms of his waiver, yet never indicated anything but full consent. Before the Court accepted Hurt's waiver, it assured itself that Hurt understood what he was doing. Hurt responded directly to the Court's questions and his attorney was present to answer any questions that he might have had in open court. Hurt is educated, spoke clearly and contemplatively, and the Court is satisfied that it "inform[ed Hurt] of, and determine[d] that [Hurt] underst[ood] . . . the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Hurt does not argue to the contrary. He received a sentence well within the terms of his plea agreements, and this Court finds that enforcement of his waiver works no miscarriage of justice.

Similarly, with respect to any claim that Hurt's counsel was ineffective in connection with the waiver itself, there is no evidence to support this argument. The Seventh Circuit has reasoned that "the right to mount a collateral attack pursuant to § 2255 survives [a waiver] only with respect to those discrete claims *which relate directly to the negotiation of the waiver*." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (emphasis added); *see also Mabry*, 536 F.3d at 243 (acknowledging that "allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver" may constitute a miscarriage of

6

justice). "[T]o determine whether ineffective assistance claims brought pursuant to § 2255 are enforceable turns on whether the ineffective assistance tainted the voluntariness of the plea or the waiver agreement itself." *Cockerham*, 237 F.3d at 1184. Claims that attack a defendant's sentencing or defense counsel's performance generally do not excuse enforcement of the § 2255 waiver. *Id.* at 1187 & n.4. In *Jones*, the Seventh Circuit ultimately affirmed the district court's dismissal of the defendant's § 2255 claims because the defendant "failed to adequately specify his claim of ineffective assistance of counsel[.]" *Id.* at 1146.

Here, Hurt does not specifically argue that his counsel was ineffective with regards to Hurt's negotiation of the plea agreements and waivers. Moreover, the record demonstrates that Hurt knowingly and voluntarily accepted the waiver provision in both oral and written form. Both of Hurt's Rule 11 Forms acknowledged that Hurt waived his right to collaterally attack certain components of his sentence. (*See* App., Exhs. 3, 6.) And the same waiver language was employed in his second plea agreement and was subject to affirmation before the Court. Hurt can marshal no evidence to challenge his collateral-attack waiver, and by extension, cannot raise a challenge to any issue pertaining to the Court's Offense Level 19 computation. Thus, Hurt has waived his claims contained in Grounds 1-3, and parts of Ground 5 (to be elaborated on below).

II.     **Hurt's Claim Contained in Ground Four is Without Merit**

In Ground 4, Hurt argues that his criminal history category should have been designated as category I, not category II. Specifically, Hurt asserts that his naval conviction from 1993 was vacated, and thus, should not have been included in his criminal history computation. The Court disagrees.

As a preliminary matter, the Government argues that Hurt is barred from raising this argument based on the equitable doctrine of unclean hands.  However, the Court need not reach this more complicated issue because Hurt's claim is baseless on its face.

Hurt's naval criminal record demonstrates the following: Hurt faced four charges, all of which occurred while Hurt was a Yeoman Second Class, submarine squadron.  These charges included: (1) attempting to steal $2,540 from the Navy Federal Credit Union in June 1992; (2) stealing $1,200 from the Navy Federal Credit Union in June 1992; (3) presenting a false travel claim of $1,145.76 to naval authorities; and (4) stealing certain mail relating to another sailor's access information to a Navy Federal Credit Union account.  (*See* Gov't Supp. Br., Exh. A.)  In June 1993, a naval court of review vacated three of the four charges of which Hurt was found guilty, with instructions that the court below hold a rehearing on those charges.  Hurt subsequently pled guilty to those three counts that were the subject of the remand.  (*Id.*)  On September 1, 1993, a naval court sentenced Hurt to 18 months' confinement, which was affirmed by a naval court of criminal appeals on November 30, 1994.  (*Id.*)  Hurt was credited with serving 238 days of that sentence, from January 6, 1993 to September 1, 1993.  (*See* Def.'s Supp. Letter Br., Exh. of Nov. 15, 1993 letter from Navy to Hurt.)  Accordingly, Hurt's sentence was well in excess of sixty days, and thus, the Court's category II criminal history calculation conformed with the Sentencing Guidelines.  *See* U.S.S.G. § 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days[.]").  Hurt has offered no evidence to lead the Court to conclude otherwise, and Ground 4, insofar as Hurt relies on a purported incomplete criminal record, will be denied.

Hurt also argues that his military sentence should not be counted for the purposes of

assessing his criminal history points because it was older than ten years. Hurt is mistaken. The Sentencing Guidelines establish that a prior sentence of less than thirteen months should be counted for a criminal history computation only if the prior sentence was imposed no longer than ten years before the "commencement of the instant offense." U.S.S.G. § 4A1.2(e)(2) & app. n.1. According to the First Information, his first fraud offense, through the Hoboken Housing Authority, started on July 3, 2002, and Hurt's tax fraud commenced at least in April 2001. Hurt's naval sentencing took place in September 1993, and thus, fell within the ten-year limit set out by the Sentencing Guidelines. Accordingly, the Court's criminal history computation was accurate, and Hurt's claims contained in Ground 4 will be denied.

### III. Hurt's Claims Contained in Ground 5 are Denied in Part, but the Court Will Hold an Evidentiary Hearing to Determine Whether Hurt Asked Counsel to File an Appeal.

In Ground 5, Hurt raises eight claims, all relating to one broad argument: ineffective assistance of counsel. Hurt claims that:

(a) Counsel did not inform Hurt of the charges until he signed a plea agreement in May 2006;

(b) No thorough explanation was given by counsel as to the exact details of his plea agreement and the consequences of signing the plea agreement and his appeal rights;

(c) Counsel failed to submit tax documents for the years 2000 and 2001 in aid of the Court's computation of Hurt's criminal history;

(d) Counsel failed to file a motion to reduce his criminal history category after

9

        receiving the PSR, which stated a criminal history category of II;

(e)    Counsel failed to file a direct appeal after sentencing;

(f)    Counsel failed to inform Hurt of the 10-day time limit to file an appeal;

(g)    Counsel failed to ensure the proper calculations with regards to the proper offense level and economic losses; and

(h)    Counsel failed to submit certain tax documentation to the IRS.

In other words, Hurt contends that his counsel was ineffective at nearly every point in the federal criminal justice process before this Court. For the reasons stated earlier with regards to Hurt's collateral attack waiver, Hurt's claims (a), (c), (g), and (h) will be denied. Further, claim (d) will be denied for the reasons stated in Section II. Remaining before the Court are claims (b), (e), and (f).

The Supreme Court has adopted a two-pronged test to determine whether counsel's performance was so egregious that a reversal of the Hurt's conviction or sentence is required:

> First, the Hurt must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the Hurt by the Sixth Amendment. Second, the Hurt must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the Hurt of a fair trial, a trial whose result is reliable. Unless a Hurt makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). This same error and prejudice test applies to claims of ineffective assistance of counsel relating to a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). The Court in *Strickland* explained that the proper measure for evaluating the

performance of counsel is "reasonableness under prevailing norms." 466 U.S. at 688. This standard is "highly deferential," *id.* at 689, because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. A petitioner claiming ineffective assistance of counsel must "identify acts or omissions of counsel that are alleged not to have been the result of professional judgment." *Id.* The petitioner carries the burden of proof to support a claim of ineffective assistance of counsel under § 2255. *United States v. ex. rel Johnson*, 531 F.2d 169, 174 (3d Cir. 1976). Here, as the Government asserts, "[o]ther than the claims regarding the alleged failure to file a direct appeal, [Hurt] has not come close to demonstrating his counsel's error or prejudice." (Gov't. Br. at 37.) The Court agrees.

     First, with respect to claim (b), Hurt argues that his counsel failed to provide him with a thorough explanation of his plea agreement, the consequences of the agreement, and appeal rights. In addition to the Court's discussion of this issue in Section I, the Court notes that, like Hurt's limited waiver of his appeal rights, Hurt indicated on his Rule 11 Form that he was satisfied "that my lawyer has counselled [sic] and advised me on the nature of each charge and on all possible defenses that I might have in this case." (App., Exh. 3, ¶ 16.) Moreover, Hurt acknowledged that he had read and fully understood the plea agreements, and Hurt's Rule 11 Forms and Court colloquy support this finding. The Court also reminded Hurt of his appellate rights immediately after the Court imposed sentence, indicating that Hurt had a right to appeal the criminal history determination and anything else that had not been waived by the stipulation set forth in the plea agreements. (*See* App., Exh. 11 at 27.) The Court sees no basis to support a claim for ineffective assistance of counsel with regard to claim (b). It is apparent to the Court

11

that Hurt wrongly seeks to shift blame to his counsel for his own predicament now that the consequences of his malevolent behavior have come to fruition. The Court will not indulge Hurt's disingenuous play. Hurt's crimes, and consequent burdens, are his responsibility alone.

In claims (e) and (f), Hurt contends that his counsel failed to file a direct appeal as Hurt requested, and that his counsel never informed him of the ten-day time period for filing an appeal. In *Solis v. United States*, the defendant claimed that he had instructed his attorney to file a direct appeal of his sentence, but his attorney failed to comply. 252 F.3d 289, 294 (3d Cir. 2001). Our Circuit found that, on its face, this allegation created a question of fact as to whether the defendant directed his attorney to file an appeal. If the defendant did, then the defendant's Sixth Amendment right to counsel was violated because prejudice is presumed from counsel's failure to file a notice of appeal when so requested by the defendant. *Id.* at 293-94. Conversely, a court may forego an evidentiary hearing when the record conclusively shows that the defendant did not ask counsel to file an appeal. *Id.* at 294; *see also Hankerson v. United States*, No. 05-5351, 2006 WL 1084086, at *2 (D.N.J. Apr. 24, 2006) ("[A] petitioner is not entitled to an evidentiary hearing where the allegations are patently frivolous or his allegations are contradicted conclusively by the record.").

Here, Hurt and his attorneys offer contradictory statements. On the one hand, Hurt asserts that his counsel, Brian Eyerman, failed "to file a direct appeal after sentencing as I requested," and that "[c]ounsel never informed me of the 10 business day time period to file a direct appeal." (Def.'s Br. at 9.) On the other hand, Eyerman states, by sworn affidavit: "I do not recall having any conversation with Mr. Hurt regarding filing an appeal or discussing with him his request to file said appeal. I do not recall Mr. Hurt ever requesting that I file an appeal on his behalf. At

12

the time of Mr. Hurt's sentencing, I have no specific recollection of informing Mr. Hurt of his right to appeal nor do I have any recollection of discussing the time limitations for an appeal." (Eyerman Aff. ¶¶ 2-3.)  Co-counsel Shelley Albert attested to a similar set of facts.  (Albert Aff.)  Counsel's somewhat vague averments, standing alone in the record, do not suffice to render Hurt's allegations "patently frivolous."  An evidentiary hearing will therefore be held "to determine whether [Hurt] requested or reasonably demonstrated to counsel that he desired to appeal."  *Solis*, 252 F.3d at 294.  For this hearing, Hurt may engage separate counsel, or, if appropriate, the Court will appoint counsel for Hurt pursuant to 18 U.S.C. § 3006(A).

Should Hurt prevail, "[a] new opportunity to appeal is the remedy for petitioner's alleged ineffective assistance of counsel."  *Id.*  Therefore, if after the evidentiary hearing, the Court concludes that Hurt's counsel was ineffective in failing to file an appeal and failing to give Hurt notice of the ten-day deadline to file, then Hurt will "be given the opportunity *nuncprotunc* to brief his direct appeal in full."  *Id.* at 295.

### CONCLUSION & ORDER

For the foregoing reasons, the Court hereby DENIES Hurt's motion (Doc. No. 1) IN PART and reserves judgment in part until after an evidentiary hearing is held.

    (1)    Hurt's claims contained in Grounds 1-4 and 5(a), (b), (d), (g), and (h) are denied.

    (2)    The Court reserves judgment on Ground 5, claims (e) and (f).

    (3)    The Court will hold a hearing on **Tuesday**, **June 30, 2009** at **11:30 a.m.** to resolve the factual dispute arising out of Hurt's claims of ineffective assistance of counsel in connection with Hurt's notice of appeal, contained in Ground 5, claims

(e) and (f).


Newark, New Jersey
Dated: May 15, 2009

                                      <u>s/ Harold A. Ackerman</u>
                                      U.S.D.J.